UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

MARY JOSEPH NAMPIAPARAMPIL,

Plaintiff,

v.

THE NYC DEPARTMENT OF SANITATION
ENFORCEMENT DIVISION, THE NYC
CAMPAIGN FINANCE BOARD, and THE CITY
OF NEW YORK,

Defendants.

**MEMORANDUM AND ORDER**

24-cv-5605-LDH-JRC

---

LASHANN DEARCY HALL, United States District Judge:

Mary Joseph Nampiaparampil ("Plaintiff"), proceeding pro se, brings the instant action against the New York City Department of Sanitation Enforcement Division (the "DSNY"), the New York City Campaign Finance Board (the "CFB"), and the City of New York (together "Defendants"), pursuant to 42 U.S.C. § 1983.  Defendant moves, pursuant to Rule 12(b)(1)[1] and 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the Complaint in its entirety.

## BACKGROUND[2]

At the end of February 2021, Plaintiff agreed to volunteer as Treasurer for a political campaign ("the Campaign") in support of her daughter, Devi Nampiaparampil (the "Candidate").

---

[1] Although Defendants only expressly move to dismiss on Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendants also advance arguments with respect to Plaintiff's standing to assert certain claims.  (Defs.' Mem. L. Supp. Mot. Dismiss ("Defs.' Mem. at 18, ECF No. 33-1.)  As such, the Court construes Defendant's motion as also brought pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

[2] The following facts are taken from the complaint, documents attached to and incorporated by reference into the complaint, and public documents of which the Court takes judicial notice.  *See Leonard F. v. Israel Disc. Bank of New York*, 199 F.3d 99, 107 (2d Cir. 1999) (holding that when ruling on a Rule 12(b)(6) motion to dismiss, the Court "confine[s] its consideration 'to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken.'" (quoting *Allen v. WestPoint–Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir.1991))); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) ("Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to

(Compl. at 10.)  The Candidate was campaigning to serve as the New York City Public Advocate.  (*Id.* at 10.)  At some point, the Candidate informed Plaintiff that, per a policy promulgated by the CFB, the Campaign was not permitted to raise or spend money without a bank account on which it was the accountholder.  (*Id.*)  Plaintiff alleges further that, according to CFB policy, the Campaign was required to open a bank account by a certain date, or the Candidate would be disqualified.  (*Id.* at 11.)  To open an account, the bank required the Campaign to provide a verification letter from the CFB stating that the Candidate was running for office.  (*Id.* at 10.)  On February 26, 2021, the CFB sent an email to the Campaign, informing it that, before the CFB would verify the Campaign's status with the bank, the Campaign was required to complete a form confirming whether it would participate in the "matching funds program."  (*Id.* at 11; *see id.* at 12.)  As a part of the matching funds program, the City of New York would potentially match donations raised.[3]  (*Id.* at 11.)  Specifically, the CFB provided the Campaign with three options for matching funds:

1. Maximum contribution per person of $2[,]000 with a possibility of 8:1 matching funds[.]
2. Maximum contribution per person of $5[,]100 with a possibility of 6:1 matching funds[.]
3. Maximum contribution per person [of] $5[,]100 with no possibility of ever receiving matching funds[.]

(*Id.*)  Plaintiff, along with the Candidate, selected and signed the accompanying form for the first option of the matching funds program, which allowed "[m]aximum contribution per person of $2[,]000 with a possibility of 8:1 matching funds."  (*Id.* at 11-12.)

---

the complaint." (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995))).  These facts are assumed to be true for the purpose of this memorandum and order, unless otherwise indicated.

[3] According to the Complaint, the matching funds program did not automatically guarantee that the City of New York would match donations raised.  (*Id.* at 12.)  Rather, to receive a matched donation from the City of New York, the Campaign would have to complete a separate application process, after which, if determined eligible, the City of New York would possibly match funds.  (*Id.*)

According to the Complaint, participation in the matching funds program required Plaintiff to confirm that she understood and was responsible for complying with Defendant City of New York's laws and rules. (*Id.* at 12.) The CFB, however, did not provide a copy of or otherwise identify these laws or rules to Plaintiff. (*Id.*) Plaintiff further alleges that, according to a brochure on the matching funds program, the donor limit applied to every campaign. (*Id.*) Further, the CFB informed Plaintiff that she and the Candidate were each subject to the contribution limits notwithstanding their respective positions within the Campaign. (*Id.* at 11.) Plaintiff alleges the CFB's limitation on her ability to make contributions contradicted the statement on the Federal Election Commission's website that "[c]andidate contributions to their own campaigns are not subject to any limits." (*Id.*)

In March 2021, the Campaign began petitioning for the Candidate to be placed on the ballot. (*Id.* at 10.) According to the complaint, some of the individuals who signed the petitions also sought to donate to the Campaign but were unable to do so because the Campaign was not yet permitted to accept any donation. (*Id.*) Plaintiff alleges that the Campaign's inability to accept donations "made [the Campaign] look suspicious." (*Id.*) Additionally, some voters searched for the Candidate on the CFB's website and were unable to find her listed as a candidate. (*Id.* at 10-11.) According to the complaint, these voters publicly accused the Campaign of being fraudulent. (*Id.* at 11.) For example, in one instance, a voter confronted Plaintiff's husband in front of a crowd and accused the Campaign of trying to steal people's social security numbers. (*Id.* at 11.) And, as a result, "the crowd became more hostile and refused to sign the petitions." (*Id.*)

Also in March 2021, the CFB informed Plaintiff that she needed to attend mandatory training sessions, during which the CFB would explain the relevant campaigning rules. (*Id.* at

12.) For example, at a training session, Plaintiff was informed that campaigns could not accept free or discounted services from lawyers or accountants, including limited liability partnerships and partnerships comprised of lawyers or accountants, but, instead, "had to pay for th[e]se services." (*Id.*) According to the Complaint, if a campaign did not have the necessary funds to hire a lawyer or accountant, it could rely only on guidance provided by "[c]andidate [l]iasions" who were employed by the CFB. (*Id.*) In addition, during a training session, the CFB informed all candidates that those who worked from home were permitted to use their homes, equipment, and supplies free of charge. (*Id.* at 13.) Plaintiff alleges that, because the Candidate did not work from home, the Candidate was not permitted to use her "work setting or any of the equipment or supplies there," thus precluding her from working for the campaign during the day. (*Id.* at 13-14.) As such, according to the Complaint, Plaintiff was the only member of the Campaign that could fundraise during the day, causing difficulties raising money for the Campaign. (*Id.* at 14.) At another training session, the CFB informed the Candidate that, unless the Campaign paid for the cost of the car, she could not use her car. (*Id.*) Plaintiff alleges that no other candidates were required to pay for the use of their own property. (*Id.*) And, because the Campaign did not have money to pay for the Candidate to use her car, the Candidate "could not meet the [voters] in Staten Island as easily or try to fundraise from them." (*Id.*)

Thereafter, and on a monthly basis, the CFB required the Campaign to submit a financial disclosure through the CFB's web portal. (*Id.*) As Treasurer of the Campaign, Plaintiff "tried" to submit these financial disclosures. (*Id.*) Plaintiff, however, alleges that navigating the CFB web portal was "extremely confusing" because there were no "manuals or videos" demonstrating how to navigate the CFB's web portal. (*Id.* at 14.) In addition, the CFB's web portal suffered from technical glitches, which, according to the Complaint, frustrated the Campaign's ability to

4

meet certain submission deadlines.  (*Id.* at 16.)  After the submission of each financial disclosure, the CFB emailed Plaintiff with concerns that it had about the Campaign's financial activity, including certain donations it received.  (*Id.* at 14.)  According to the Complaint, where there were concerns about donations, Plaintiff contacted donors to request that they complete forms confirming their donations.  (*Id.* at 14-15.)  Because Plaintiff was unable to complete any portion of these forms, Plaintiff's husband occasionally drove her to the homes of the donors, during the Covid-19 pandemic, to demonstrate how to complete the confirmation forms.  (*Id.* at 15.)  Plaintiff alleges that "[m]any of the donors did[ not] believe [her], and did[ not] want to fill out the forms because they thought it was too much work."  (*Id.*)  Plaintiff further alleges that even the donors that completed the confirmation forms "[did not] want to donate again or tell others to donate."  (*Id.*)  According to the Complaint, the Campaign lost donations as a result.  (*Id.*)

Although the Complaint does not specify the date, sometime during the summer of 2021, the Campaign submitted the Candidate's profile for the CFB's voter guide (the "Voter Guide").  (*Id.* at 17.)  The Voter Guide consists of information regarding all candidates, which is mailed to "every possible voter in the City" of New York.  (*Id.*)  In addition, the Voter Guide has a corresponding online guide, as well as a separate video component, in which candidates discuss their proposed policies.  (*Id.*)  In August 2021, after the Campaign had submitted the Candidate's profile, David Duhalde, an employee with the CFB, emailed the Candidate to assist the Campaign.  (*Id.*)  According to the Complaint, Mr. Duhalde was a "lifetime member [and leader] of the Democratic Socialists of America [("DSA")]" and fundraised for the DSA while working for the CFB.  (*Id.*)  Plaintiff also alleges that, in a previous election, Mr. Duhalde donated to the DSA's candidate for public advocate, Jumaane Williams, who, in August 2021, was the Candidate's competitor.  (*Id.*)  Ultimately, the Campaign submitted Voter Guide materials to the

5

CFB, in which the Candidate asserted, among other things, that " Jumaane Williams is married to a lobbyist." (*Id.* at 18.) Following the Campaign's submission, Mr. Duhalde urged the Candidate to change her video script and informed her that she was prohibited from referencing Mr. Williams by his full name in the Campaign's print and online submissions. (*Id.*) In addition, the Candidate was informed that campaigns were prohibited from criticizing government officials by name in the voter guide mailed out to voters. (*Id.*) The Candidate subsequently changed the Campaign's video script and removed Mr. Williams's name from its print and online materials. (*Id.*) Nonetheless, the Candidate was excluded from the Voter Guide because the Campaign "had referred to incumbent Government Official Jumaane Williams by his name." (*Id.*) Plaintiff alleges that, because the Candidate was omitted from the Voter Guide, "several donors" accused her of "a serious oversight." (*Id.*) As a result, Plaintiff felt embarrassed and disheartened. (*Id.*) In addition, according to the Complaint, "donations dropped almost to $0" after the exclusion of the Candidate's profile. (*Id.* at 18-19.)

Moreover, Plaintiff alleges that the CFB was required to hold two mandatory debates for candidates for the public advocate office. (*Id.* at 19.) To qualify for the first debate, campaigns had to meet specific "financial thresholds." (*Id.*) According to the Complaint, the Campaign met the thresholds for the first debate. (*Id.*) The CFB, nonetheless, made a public statement that the Campaign did not meet the required thresholds and, thus, did not qualify for the first debate. (*Id.*) Plaintiff alleges that, because of this statement, she was embarrassed and accused by donors of lying about the money collected by the Campaign. (*Id.* at 19, 23.) Next, on October 5, 2021, the second debate was canceled by the CFB because "two or more candidates on the ballot ha[d] not met the nonpartisan, objective *eligibility thresholds* established by [Defendant City of New York's] Campaign Finance Act." (*Id.* at 21-22 (emphasis in original).) Plaintiff, however,

6

alleges that the CFB canceled the second debate because the CFB "did not want [the Candidate] . . . to be able to criticize the [g]overnment [o]fficial." (*Id.* at 21.)

In December 2021, following the election, Plaintiff was diagnosed with gastric cancer. (*Id.* at 23.) Thereafter, on March 1, 2022, Plaintiff underwent surgery to address her cancer. (*Id.*) Plaintiff alleges that, around this time, the DSNY accused her of posting flyers encouraging voters to vote for the Candidate following the election. (*Id.* at 23.) The DSNY subsequently issued Plaintiff eleven "summonses" on these grounds. (*Id.*) According to the complaint, these accusations were based on "a law that said if your name is on the [flyer,] . . . then you are guilty." (*Id.* at 25.) Plaintiff alleges, however, that her name was not included on any of the flyers. (*Id.*) Nevertheless, according to the Complaint, DSNY failed to mail the summonses to Plaintiff. (*Id.* at 23.) The Candidate, however, received the summonses by "accident." (*Id.*) Plaintiff alleges that a "trial" as to these summonses was scheduled for March 4, 2022, just few days after Plaintiff's surgery. (*Id.*) According to the Complaint, the Candidate appeared on behalf of Plaintiff at the scheduled hearing. (*Id.* at 24.) During the hearing, the Candidate requested an adjournment, which the judge granted. (*Id.*) The "trial" was then rescheduled for June 3, 2022. (*Id.*) Plaintiff alleges that, at some point after the initial hearing, the Candidate and four other volunteers on the Campaign submitted affidavits on Plaintiff's behalf. (*Id.*) Ultimately, the charges against Plaintiff were dismissed. (*Id.*)

In 2022, the Candidate "[took] the CFB to Court." (*Id.* at 29.) Specifically, in August 2022, the Candidate filed a proposed order to show cause in an Article 78 proceeding previously initiated by the Candidate to halt distribution of the Voter Guide. (Compl. ¶ 89, *Nampiaparampil v. The New York City Campaign Finance Board* ("*Nampiaparampil*"), No. 23-cv-06391 (S.D.N.Y. July 24, 2023), ECF No. 1; Mem. L. Supp. Defs.' Mot. Dismiss at 5 n.2,

*Nampiaparampil*, No. 23-cv-06391 (S.D.N.Y. Nov. 10, 2023), ECF No. 26; Order at 6 n.2, *Nampiaparampil*, No. 23-cv-06391 (S.D.N.Y. May 8, 2024), ECF No. 45.)[4] The court declined to issue the proposed order. (Compl. ¶ 90, *Nampiaparampil*, No. 23-cv-06391 (S.D.N.Y. July 24, 2023), ECF No. 1; Order at 6, *Nampiaparampil*, No. 23-cv-06391 (S.D.N.Y. May 8, 2024), ECF No. 45.) Thereafter, the CFB commenced an ongoing, post-election audit of the Campaign (the "Audit"). (Compl. at 29, 31.) Plaintiff alleges that the CFB initiated the Audit because the Candidate filed the proposed order to show cause in the Article 78 proceeding. (*See id.* at 29.) Moreover, according to the Complaint, at some point during the Audit, Plaintiff was informed by the CFB that she, as the Campaign's former treasurer, could be held responsible for each campaign finance violation discovered, which included a penalty of $10,000 per violation. (*Id.*) And, Plaintiff alleges that, during the Audit, the CFB "suddenly" discovered "75 new violations" notwithstanding the CFB previously telling the Campaign that it had a "0.00 error rate." (*Id.*) The discovery of these violations made Plaintiff concerned about whether the CFB would garnish her pension and social security benefits, especially considering Plaintiff relied on this income to pay for her medical bills and livelihood. (*Id.*) In addition, Plaintiff alleges that she was not permitted to review the Campaign's financial records because she was "past the maximum of [her] allowed in-kind contributions," making her review of said materials "illegal." (*Id.*) According to the Complaint, the Campaign was unable to hire anyone to assist with the Audit for similar reasons. (*Id.* at 31.) That said, Plaintiff alleges that the Campaign committed

---

[4] The Court takes judicial notice of the Candidate's complaint, the defendants' memorandum of law in support of their motion to dismiss, and the court's order on the defendants' motion to dismiss, which were filed in a prior, pending action in the United States District Court of the Southern District of New York ("SDNY"). *See Ferrari v. Cnty. of Suffolk*, 790 F. Supp. 2d 34, 38 n.4 (E.D.N.Y. 2011) ("In the Rule 12(b)(6) context, a court may take judicial notice of prior pleadings, orders, judgments, and other related documents that appear in the court records of prior litigation and that relate to the case *sub judice*."); *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir.2008) (courts may take judicial notice of court filings).

no errors in their financial disclosures.  (*Id.* at 30 ("Our error rate for the Financial Disclosure was 0.00%").)

Further, in October 2022, the Candidate, proceeding pro se, initiated an action against the CFB in New York state court (the "State Court Action").  (Compl. ¶ 98, *Nampiaparampil*, No. 23-cv-06391 (S.D.N.Y. July 24, 2023), ECF No. 1); *see also Nampiaparampil v. New York City Campaign Finance Bd.*, No. 159019/2022, 2023 WL 2949501, at *1 (N.Y. Sup. Ct. Apr. 14, 2023).[5]  In the State Court Action, the Candidate alleged that, *inter alia*, the CFB negligently made various representations about the contribution limits and spending restrictions of the matching fund program during the candidate training sessions.  *Nampiaparampil*, No. 159019/2022, 2023 WL 2949501, at *1.  Further, the Candidate alleged that the CFB published two libelous statements that injured Plaintiff's reputation.  *Id.* at *2.  The first alleged libelous statement, which related to the publication of the Voter Guide, represented that the Candidate's profile was excluded as untimely.  *Id.*  And, the second alleged libelous statement, which related to a press release issued just before the second debate, represented that the second debate for the Public Advocate position was not required because two or more candidates had not met the necessary criteria.  *Id.* at *2.  Ultimately, the state court found that the Candidate failed to comply with New York's notice of claim provisions prior to commencing the action.  *Id.*  In addition, the state court denied a cross motion by the Candidate, which sought to rectify the Candidate's failure to comply with New York's notice of claim provisions *nunc pro tunc*, because the statute of limitations had elapsed.  *Id.*  The court noted that these reasons, "alone," were sufficient for dismissing the Candidate's action.  *Id.*  Nonetheless, the court stated that,

---

[5] The Court takes judicial notice of the State Court Action, which is referenced by Defendants.  (*See* Defs.' Mem.) *See Ferrari*, 790 F. Supp. 2d at 38 n.4 ("In the Rule 12(b)(6) context, a court may take judicial notice of prior pleadings, orders, judgments, and other related documents that appear in the court records of prior litigation and that relate to the case *sub judice*."); *Staehr*, 547 F.3d at 425 (finding that courts may take judicial notice of court filings).

"given the importance of the allegations to plaintiffs, [it would] address the merits of each cause of action." *Id.* at *3. The court then addressed the merits of the Candidate's negligence and libel claims and determined that both failed. *Id.* *3-5. Specifically, the court found that the negligence claim failed because the complaint there did not contain allegations from which the court could infer the special duty or causation elements of a negligence claim. *Id.* at *3-4, *4 n.6. And, the court found that the Candidate's libel claims failed because the complaint did not contain allegations that would plausibly established that either of the alleged libelous statements were false.[6] *Id.* at *5. After reaching these conclusions, the court dismissed the complaint with prejudice. *Id.* at *6.

**STANDARD OF REVIEW**

I.     **Rule 12(b)(1)**

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. U.S.*, 201 F.3d 110, 113 (2d Cir. 2000). The plaintiff bears the burden of establishing beyond a preponderance of the evidence that subject-matter jurisdiction exists. *Id.* "In reviewing a Rule 12(b)(1) motion to dismiss, the court 'must accept as true all material factual allegations in the Complaint, but [the court is] not to draw inferences from the complaint favorable to plaintiff[ ].'" *Tiraco v. New York State Bd. of Elections*, 963 F. Supp. 2d 184, 190 (E.D.N.Y. 2013) (quoting *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004)). Further, "[i]n resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court . . . may refer to evidence outside the pleadings." *Makarova*, 201 F.3d at 113.

---

[6] The court also found that the Candidate's libel claim based on the statement made in connection with the cancelation of the second debate failed because the allegations in the complaint did not allow a plausible inference that this statement referred to or specifically identified the Candidate. *See Id.* at *5.

10

## II.   Rule 12(b)(6)

To survive a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court deciding whether to grant a motion to dismiss must "draw all reasonable inferences in [the plaintiff's] favor, assume all 'well-pleaded factual allegations' to be true, and 'determine whether they plausibly give rise to an entitlement to relief.'" *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (quoting *Selevan v. N.Y. Thruway Auth.*, 584 F.3d 82, 88 (2d Cir. 2009)) (internal citation omitted). "[T]he tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678. Further, a court is not obligated to accept a plaintiff's "conclusory allegations or legal conclusions masquerading as factual conclusions." *Faber*, 648 F.3d at 104 (quoting *Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008)).

Moreover, where, as here, plaintiffs are proceeding pro se, their pleadings "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)). A pro se complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Boykin v. KeyCorp*, 521 F.3d 202, 213–14 (2d Cir. 2008) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94, 127 (2007) (per curiam)). This rule is "particularly so when the pro se plaintiff alleges that [his] civil rights have been violated." *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) (citing *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004)). Still, "even pro se plaintiffs

11

asserting civil right claims cannot withstand a motion to dismiss unless their pleadings contain factual allegations sufficient to raise a 'right to relief above the speculative level.'" *Jackson v. NYS Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

## DISCUSSION

In the instant action, Plaintiff asserts claims against the City of New York and two of its agencies—the CFB and the DSNY. *Brodsky v. N.Y.C. Campaign Fin. Bd.*, 796 F. App'x 1, 5 (2d Cir. 2019) ("The [CFB] is a New York City agency . . . ."); *Famiglietti v. New York City Dep't of Sanitation*, No. 1:23-CV-2754, 2024 WL 4606817, at *1 n.1 (E.D.N.Y. Oct. 28, 2024). (finding that the DSNY is a "New York City agency"). As an initial matter, however, "actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the [C]ity of New York and not in that of any agency, except where otherwise provided by law." N.Y. City Charter § 396. That is, "Section 396 of the [New York City] Charter has been construed to mean that New York City departments, as distinct from the City itself, lack the capacity to be sued." *Ximines v. George Wingate High Sch.*, 516 F.3d 156, 160 (2d Cir.2008) (citing *Jenkins v. City of New York*, 478 F.3d 76, 93 n.19 (2d Cir.2007)). Accordingly, the CFB and the DSNY are non-suable entities that are incapable of distinctly being held liable under Plaintiff's claims. *See id*.

Nevertheless, in instances where claims are brought against non-suable entities, a court may construe the claims as being brought against the City of New York. *Romero v. City of N.Y.*, 839 F. Supp. 2d 588, 602 (E.D.N.Y. 2012) ("When claims are brought against non-suable entities, the Court may construe them as brought against the City of New York." (internal quotation marks omitted) (quoting *Alleva v. New York City Dep't of Investigation,* 696 F.Supp.2d

12

273, 276 n. 2 (E.D.N.Y.2010))).  Accordingly, Plaintiff's claims are dismissed as to the CFB and the DSNY and are construed to be brought against the City of New York, which is already a named defendant in this action.  *See Romero*, 839 F. Supp. 2d at 602.  That said, the Court will continue to refer to the CFB and the DSNY for the purposes of this opinion.  *See Id.*

**I.    The Claims Arising from the Voter Guide, the Debate, and the Matching Fund Program are Precluded**

Defendants contend that Plaintiff's First Amendment claims concerning the CFB's contribution requirements and practices, exclusion of the Candidate from the Voter Guide, and cancellation of the second mandatory debate are barred by the doctrine of res judicata.  (Defs.' Mem. L. Supp. Mot. Dismiss ("Defs.' Mem."), at 13-16, ECF No. 33-1.)  The Court agrees.

Traditionally, "the doctrine of res judicata, or claim preclusion, holds that 'a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'"  *Monahan v. New York City Dep't of Corr.*, 214 F.3d 275, 284-85 (2d Cir. 2000) (first quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980); and then quoting *Burgos v. Hopkins*, 14 F.3d 787, 789 (2d Cir.1994)).  It is well settled that, "[u]nder the [United States] Constitution's Full Faith and Credit Clause, federal courts must accord state court judgments the same preclusive effect as other courts within that state."  *Burgos v. Hopkins*, 14 F.3d at 790 (internal citation omitted); *Green v. Montgomery*, 219 F.3d 52, 55 (2d Cir. 2000).  In New York, res judicata "bars successive litigation based upon the same transaction or series of connected transactions if: [](i) there is a judgment on the merits rendered by a court of competent jurisdiction, and (ii) the party against whom the doctrine is invoked was a party to the previous action, or in privity with a party who was."  *Ceccarelli v. Morgan Stanley Priv. Bank, N.A.*, No. 25-443-CV, 2025 WL 2992528, at *3 (2d Cir. Oct. 24, 2025) (summary order) (internal

quotation marks omitted) (quoting *People ex rel. Spitzer v. Applied Card Sys., Inc.*, 894 N.E.2d 1, 12 (N.Y. 2008)). Notably, res judicata "extends beyond attempts to relitigate identical claims." *Id.* (internal quotation marks omitted) (quoting *Simmons v. Trans Express Inc.*, 37 N.Y.3d 107, 111 (2021)). "New York courts apply a transactional analysis approach in determining whether an earlier judgment has claim preclusive effect, such that once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy." *E.g.*, *Whitfield*, 96 F.4th at 523 (quoting *Simmons*, 37 N.Y.3d at 111) (citing *New York v. Mountain Tobacco Co.*, 942 F.3d 536, 543 (2d Cir. 2019)). That said, the operation of this broad bar is "not limitless." *Id.* Indeed, "the New York Court of Appeals has taken a pragmatic and flexible attitude toward claim preclusion, recognizing that the doctrine, if applied too rigidly, could work considerable injustice." *Ceccarelli*, No. 25-443-CV, 2025 WL 2992528, at *3 (internal quotation marks and citation omitted). Consistent with that approach, res judicata is confined to instances where "the initial forum . . . h[ad] the power to award the full measure of relief sought in the later litigation." *E.g.*, *id.* (quoting *Davidson v. Capuano*, 792 F.2d 275, 278 (2d Cir. 1986)).

Here, Plaintiff's First Amendment claim concerning the CFB's contribution requirements is predicated on the following allegations: (1) according to one of the CFB's policies, the Campaign was not permitted to raise or spend money without a bank account for the Campaign, (Compl. at 10); (2) in March 2021, when the Campaign began petitioning for the Candidate to be placed on the ballot, the Campaign was unable to accept any contributions because it did not have a bank account and, as a result, was deemed suspicious by voters, (*id.*); and (3) once the Campaign opened a bank account and was able to accept donations, the CFB, on multiple

14

occasions, flagged legitimate donations as suspicious, resulting in lost donations, (*id.* at 14-15).

Next, Plaintiff's First Amendment claim arising from the Voter Guide is predicated on

allegations that, despite the Campaign's compliance with the CFB's instructions for submitting a

candidate profile, the CFB excluded the Candidate's profile from the Voter Guide.  (*Id.* at 17-

18.)  And, Plaintiff's First Amendment claim arising from the cancellation of the second debate

is based on allegations that the CFB canceled the second mandatory debate because the CFB

"did not want [the Candidate] . . . to be able to criticize the [g]overnment [o]fficial," thus

violating Plaintiff's rights under the First Amendment.  (*Id.* at 21.)  Critically, in the State Court

Action, the Candidate asserted claims arising out of the CFB's:  (1) purported representations

about the contribution limits and spending restrictions of the matching fund program; (2)

exclusion of the Candidate's profile in the Voter Guide; and (3) cancellation of the second debate

for Public Advocate.  *Nampiaparampil v. New York City Campaign Finance Bd.*, No.

159019/2022, 2023 WL 2949501, at *1-2 (N.Y. Sup. Ct. Apr. 14, 2023).  Notwithstanding,

Plaintiff argues that her claims are not barred by res judicata.  (Pl.'s Mem. L. Opp'n Defs.' Mot.

Dismiss ("Pl.'s Mem.") at 6-7, ECF No. 37.)  Plaintiff is wrong.

When employing the transactional analysis approach to determine whether res judicata

applies, Courts analyze three factors.  *Ceccarelli*, No. 25-443-CV, 2025 WL 2992528, at *3.

Specifically, "to determine whether two claims arise out of the same transaction or series of

transactions . . . courts should analyze[:]  [1] whether the claims turn on facts that are related in

time, space, origin, or motivation, [2] whether they form a convenient trial unit, and [3] whether

their treatment as a unit conforms to the parties' expectations or business understanding or

usage."  *Ceccarelli*, No. 25-443-CV, 2025 WL 2992528, at *3 (first, third, fourth, and fifth

alterations in original) (internal quotation marks omitted) (quoting S*immons*, 37 N.Y.3d at 111).

With respect to the first factor, there can be no question that the instant claims arising out of the CFB's contribution requirements and practices, Voter Guide, and cancellation of the second debate are based on much of the same, if not identical, allegations as those underlying the State Court Case.  At bottom, the instant allegations are identical in "time, space, origin, [and] motivation," as those on which the State Court Action was predicated.  *Ceccarelli*, No. 25-443-CV, 2025 WL 2992528, at *3 (quoting S*immons*, 37 N.Y.3d at 111).  Indeed, the allegations here arise from the "the same pattern of behavior" by the CFB as that alleged in the State Court Action.  *Waldman v. Vill. of Kiryas Joel*, 207 F.3d 105, 111 (2d Cir. 2000); *Waldman*, 207 F.3d at 111 (dismissing claims in a subsequent action as barred by res judicata where the allegations on which the claims were premised arose from "the same pattern of behavior" by the defendant as that in a prior case).  And, because the instant claims stem from the same actions alleged in the State Court Action, the claims would be a "convenient trial unit."  *See Soules v. Connecticut*, 882 F.3d 52, 56 (2d Cir. 2018) (finding that "there can be no question" that claims alleging the same conduct by the defendants form a convenient trial unit).  In addition, given the factual similarities between this case and the State Court Action, it is plain that the parties in both cases would have reasonably expected the claims to be tried together.  *See UBS Sec. LLC v. Highland Capital Mgmt., L.P.*, 86 A.D.3d 469, 475 (N.Y. App. Div. 2011) (finding that treatment as a unit conformed to parties' expectations because the claims were not "so unrelated" that the parties "would have expected them to be tried separately").  As such, res judicata applies to the First Amendment claims arising from the CFB's contribution requirements and practices, Voter Guide, and cancellation of the second debate.

In an attempt to persuade the Court otherwise, Plaintiff argues that, because the judgment in the State Court Action was determined on "procedural issues," the prior action did not result

16

in a final judgment on the merits, as required for res judicata to be applicable.  (Pl.'s Mem. at 9.)

Plaintiff is mistaken.  It is true that, in the State Court Action, the court analyzed the notice

requirements and statute of limitations of each statute under which the Candidate's claims arose,

finding that the Candidate did not satisfy the notice requirement and that the claims were

untimely.  *Nampiaparampil v. New York City Campaign Finance Bd.*, No. 159019/2022, 2023

WL 2949501, at *2 (N.Y. Sup. Ct. Apr. 14, 2023).  And, the court concluded that "for these

reasons alone, [the Candidate's] causes of action [are] dismissed."  *Id.*  That said, however,

within the context of the decision, the language used by the court meant only that those reasons,

alone, were sufficient for dismissal.  *See id.*  It is without question that the court did not intend

that those reasons be the sole basis of its decision.  *See id.*  Indeed, the court explicitly went on to

"address the merits of each cause of action."  *Id.*; *see id.* at *4-*8.  Moreover, even assuming the

court intended to limit its holding to just the notice requirement and statute of limitations, it

would still be a determination on the merits.  As expressed by the court, the Candidate's failure

to properly serve a notice of claim on the CFB could not be rectified because the statute of

limitations had elapsed for all the Candidate's claims.  *Id.* at *2.  And, it is well settled under

New York law that "a dismissal on the ground that the statute of limitations has expired is a

determination on the merits for res judicata purposes."  *Cohen v. Glass*, 100 N.Y.S.3d 872, 873,

173 A.D.3d 580 (N.Y. App. Div. 2019).  Therefore, contrary to Plaintiff's contention, the State

Court Action resulted in a final judgment on the merits.

Undeterred, Plaintiff contends that she was not in privity with the plaintiff in the State

Court Action—that is, the Candidate.  (Pl.'s Mem. at 7-8.)  Incorrect.  "Under New York law,

"'privity is not susceptible to a hard-and-fast definition.'"  *Lipman v. Rodenbach*, 852 F. App'x

578, 581 (2d Cir. 2021) (quoting *People ex rel. Spitzer v. Applied Card Sys., Inc.*, 11 N.Y.3d

17

105, 123 (2008)). "[A]lthough privity d[oes] not possess a 'technical and well-defined meaning,' it[, nonetheless,] describe[s] a rule by which 'a person may be bound by a prior judgment to which [s]he was not a party of record." *Chase Manhattan Bank, N.A. v. Celotex Corp.*, 56 F.3d 343, 346 (2d Cir. 1995) (quoting *Watts v. Swiss Bank Corporation,* 27 N.Y.2d 270, 317 N.Y.S.2d 315, 320 (1970)). "For the purposes of [res judicata]," privity exists when there is "substantial identity of the incentives of the earlier party with those of the party [in the present action]." *Id.* That is, to establish privity, "the connection between the parties must be such that the interests of the nonparty can be said to have been represented in the prior proceeding." *Lipman*, 852 F. App'x at 581 (quoting *Green v. Santa Fe Indus., Inc.*, 70 N.Y.2d 244, 253 (1987)); *see also Chase*, 56 F.3d at 346 ("Under New York law[,] . . . privity [is] looked to as a means of determining whether the interests of the party against whom preclusion is asserted were represented in prior litigation."). District courts in this Circuit have long found a "'sufficiently close nexus'" between a candidate for political office and her staff, such that their interests are "sufficiently identical" for the purposes of preclusion. *Carino v. Town of Deerfield (Oneida Cnty., N.Y.)*, 750 F. Supp. 1156, 1169-170 (N.D.N.Y. 1990) (quoting *Coalition For A Progressive New York v. Colon*, 722 F.Supp. 990, 997 (S.D.N.Y.1989)), *aff'd sub nom. Carino v. Town of Deerfield*, 940 F.2d 649 (2d Cir. 1991); *see also Neville v. Bd. of Elections of City of N. Y.*, No. 92 CIV. 6569, 1992 WL 297588, at *1 (S.D.N.Y. Oct. 7, 1992) ("A candidate is bound by the determinations made in an action pursued by his staff, just as if [s]he had been a party, because there is a sufficiently close relationship to view the latter as authorized by the former to represent his interests." (citing *Tarpley v. Salerno*, 803 F.2d 57, 60 (2d Cir.1986)). Indeed, courts have concluded that the relationship between a candidate for political office and her staff is "close enough to be viewed as an authorization by the [latter] to the [former] to represent [her]

18

. . . ." *Coal. for a Progressive New York v. Colon*, 722 F. Supp. 990, 997 (S.D.N.Y. 1989) (third and fourth alteration in original) (quoting *Tarpley*, 803 F.2d at 60). Plainly stated, staff members of a political candidate are in privity with that candidate. *See Carino*, 750 F. Supp. at 1169-170; *Neville*, No. 92 CIV. 6569, 1992 WL 297588, at *1; *Colon*, 722 F. Supp. at 997. In the instant matter, Plaintiff concedes that she served as Treasurer of the Campaign. (Compl. at 10.) Thus, there is no question that Plaintiff, as the Campaign's Treasurer, is in privity with the plaintiff in the State Court Action—that is, the Candidate.

As such, the First Amendment claims arising from the CFB's contribution policies, Voter Guide, and the debate are precluded. These claims are dismissed, accordingly.[7]

## II.    The Retaliation Claim Arising from the Audit is Duplicative

By their motion, Defendants argue that Plaintiff's retaliation claim concerning the Audit is duplicative of a claim raised in a prior pending federal action and, as a result, should be stayed or dismissed. (Defs.' Mem. at 16-17.) The Court agrees.

As a general rule, district courts avoid duplicative litigation. *Lexico Enters., Inc. v. Cumberland Farms, Inc.*, 686 F. Supp. 2d 221, 224 (E.D.N.Y. 2010) (citing *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)). Indeed, the Second Circuit has made clear that "plaintiffs have no right to maintain two actions on the same subject

---

[7] In her opposition, Plaintiff also argues that, because the state court did not address the constitutional issues alleged herein, the instant claims are not precluded. (Pl.'s Mem. at 9.) Plaintiff's argument, however, confuses the doctrine of res judicata with the doctrine of collateral estoppel, which are related but distinct doctrines. *See Flaherty v. Lang*, 199 F.3d 607, 612 (2d Cir. 1999) ("Res judicata and collateral estoppel are related but distinct doctrines that may bar a party from litigating certain claims or issues in a subsequent proceeding."). Under the doctrine of collateral estoppel, "a prior judgment . . . foreclos[es] successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment." *Herrera v. Wyoming*, 587 U.S. 329, 342–43 (2019). *See Constantine v. Teachers Coll.*, 448 Fed.Appx. 92, 93 (2d Cir. 2011) ("'The fundamental notion of the doctrine of collateral estoppel, or issue preclusion, is that an issue of law or fact actually litigated and decided by a court of competent jurisdiction in a prior action may not be relitigated in a subsequent suit between the parties or their privies.'" (quoting *Ali v. Mukasey*, 529 F.3d 478, 489 (2d Cir.2008)). As noted, *supra*, Defendants assert the "affirmative defense" of res judicata, not collateral estoppel. (Defs.' Mem. at 13.) Accordingly, the Court, thus, limits its analysis to whether the claims are precluded under the doctrine of res judicata.

in the same court, against the same defendant at the same time." *Curtis v. Citibank, N.A.*, 226 F.3d 133, 138-39 (2d Cir.2000). As such, when a party files a suit involving the same subject matter as that in an earlier-filed, pending suit, district courts apply the "prior pending action doctrine" to determine whether the subsequent action should be stayed or dismissed to avoid duplicative litigation. *Sciascia v. Rochdale Vill., Inc.*, 851 F. Supp. 2d 460, 468 (E.D.N.Y. 2012) (citing *Curtis*, 226 F.3d at 138 ("As part of its general power to administer its docket, a district court may stay or dismiss a suit that is duplicative of another federal court suit.")); *Lafont v. Phillip*, No. 21-CV-3739 , 2022 WL 2132992, at *2 (E.D.N.Y. June 14, 2022) (quoting *Lexico*, 686 F. Supp. 2d at 224); *see Colorado River*, 424 U.S. at 817 ("As between federal district courts, . . . though no precise rule has evolved, the general principle is to avoid duplicative litigation."). The prior pending action doctrine, like the closely related but distinct doctrines of res judicata and collateral estoppel, generally prohibits parties from litigating claims more than once. *Sciascia*, 851 F. Supp. 2d at 468 (citing *Curtis*, 226 F.3d at 138). Notably, however, an exception is made for instances where convenience or special circumstances would give priority to the second suit. *Lexico*, 686 F. Supp. 2d at 224 (citing *First City Nat'l Bank,* 878 F.2d at 79–80).

Here, Plaintiff alleges that the Candidate filed a proposed order to show cause in a previously initiated Article 78 proceeding against the CFB, and thereafter, the CFB initiated the Audit in retaliation against the Campaign. (Compl. at 29). As Defendants point out, though, there is a similar pending action that was previously initiated in the United Stated District Court for the Southern District of New York (the "SDNY"). (Defs.' Mem. at 16.) Specifically, the Candidate brought a retaliation claim against the CFB in the SDNY with respect to the initiation of the Audit. *See* Compl., *Nampiaparampil*, No. 23-cv-06391-ER (S.D.N.Y. July 24, 2023),

20

ECF No. 1; Order, *Nampiaparampil*, No. 23-cv-06391-ER (S.D.N.Y. May 8, 2024), ECF No. 26.)  To be sure, in the SDNY action, the Candidate alleged that, after filing a proposed order to show cause in a state court action against the CFB, the CFB "abruptly" sent her a letter describing alleged finance violations made by the Campaign, commenced the Audit, and "threaten[ed] 'significant penalties.'"  (Compl. ¶ 91, *Nampiaparampil*, No. 23-cv-06391 (S.D.N.Y. July 24, 2023), ECF No. 1.)  Ultimately, the court concluded that the Candidate failed to plead a claim of retaliation, because the complaint there failed to allege any policy or custom of retaliation on the part of the CFB, as required to sustain a claim against a municipality under 42 U.S.C. § 1983.  (Order at 16-17, *Nampiaparampil*, No. 23-cv-06391-ER (S.D.N.Y. May 8, 2024), ECF No. 45.)  Nonetheless, the court granted the Candidate leave to amend her complaint as to only the retaliation claim.  (*Id.* at 19-20.)  Plaintiff subsequently filed an amended complaint as to only the retaliation claim, which is currently pending before the SDNY court. (*See* First Am. Compl., *Nampiaparampil*, No. 23-cv-06391-ER (S.D.N.Y. May 30, 2024), ECF No. 46.)

Actions are considered duplicative where both actions are based on a common nucleus of operative facts and where the "claims, parties, and available relief do not significantly differ between the actions." *Curtis v. DiMaio*, 46 F. Supp. 2d 206, 215 (E.D.N.Y. 1999) (citation omitted), *aff'd*, 205 F.3d 1322 (2d Cir. 2000); *see Curtis*, 226 F.3d at 139 (finding that a second suit is duplicative when predicated "on the same subject in the same court, against the same defendant at the same time").  Critically, courts are accorded broad discretion to determine whether a subsequent action is duplicative of an earlier-filed pending action and, thus, ripe for dismissal or a stay.  *DiMaio*, 46 F. Supp. 2d 206, 215 (E.D.N.Y. 1999) (citation omitted), *aff'd*,

205 F.3d 1322 (2d Cir. 2000); *see Curtis*, F.3d at 139 (explaining that it is in the "district court's discretion" whether to "stay the second suit[ or] dismiss it without prejudice").

Here, there can be no question that the instant claim for retaliation arising from the Audit is duplicative of the retaliation claim as asserted by the Candidate in the earlier-filed, pending SDNY action.  And, the Complaint fails to include any allegation from which the Court could infer any special circumstance that might obviate the rule against duplicative claims.  (*See* Compl.)  For example, Plaintiff does not allege any facts sufficient for the Court to infer that the SDNY suit was "against a[ny] customer of [any] alleged infringer while the [instant] suit is against the infringer" or that "forum shopping alone motivated the choice of the situs for the [SDNY] suit."  *William Gluckin & Co. v. Int'l Playtex Corp.*, 407 F.2d 177, 178 (2d Cir. 1969) (providing two examples of special circumstances).  Plaintiff's claim for retaliation arising from the Audit is dismissed, accordingly.

## III.    Plaintiff Lacks Standing to Bring the Claims Arising from the Summonses Issued by the DSNY

Defendants argue that, because the violations charged in the summonses were dismissed and resulted in no penalties to Plaintiff, Plaintiff lacks constitutional standing to assert claims arising from said charges or summonses.[8]  (*See* Defs.' Mem. at 18.)  The Court agrees.

Article III, Section 2 of the United States Constitution limits the subject-matter jurisdiction of the federal courts to "Cases" and "Controversies."  U.S. Const. art. III § 2, cl. 1;

---

[8] In their brief, Defendants specifically contend that, because the charged violations included in the summonses were all dismissed, the injunctive relief sought by Plaintiff would no longer redress any injury. (Defs.' Mem. at 18.)  As Defendants' argument goes, Plaintiffs claims arising from the summonses are, therefore, moot. (*Id.*)  Upon review of the Complaint, and as discussed, *infra*, it is plain to the Court that Plaintiff intended to seek declaratory relief, not injunctive relief. (*See* Compl.)  Moreover, it is also clear that, although framed as an argument about redressability—that is, the ability of Plaintiff's desired relief to redress the alleged injury—at bottom, Defendants' argument hinges on whether Plaintiff alleged an injury sufficient to demonstrate standing. (*See* Defs.' Mem. at 18.)  The Court, therefore, construes Defendants' argument as such.

*see Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559 (1992); *SM Kids, LLC v. Google LLC*, 963 F.3d 206, 211 (2d Cir. 2020) (citing *Dhinsa v. Krueger*, 917 F.3d 70, 77 (2d Cir. 2019). The standing doctrine is borne out of Article III as a means of "'ensur[ing] that federal courts do not exceed their authority as it has been traditionally understood.'" *SM Kids*, 963 F.3d 206, 211 (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)). To prove constitutional standing, "a plaintiff must adequately establish: (1) an injury in fact (*i.e.,* a 'concrete and particularized' invasion of a 'legally protected interest'); (2) causation (*i.e.,* a '"fairly . . . trace[able]"' connection between the alleged injury in fact and the alleged conduct of the defendant); and (3) redressability (*i.e.,* it is '"likely"' and not 'merely "speculative"' that the plaintiff's injury will be remedied by the relief plaintiff seeks in bringing suit)." *Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 273-74 (2008) (quoting *Defenders of Wildlife*, 504 U.S. at 560-61).

Here, Plaintiff alleges that the DSNY wrongly accused her of posting eleven flyers encouraging voters to vote for the Candidate after the conclusion of the election, in violation of Section 10-119 of the New York City Administrative Code. (*Id.* at 23-24, 26.) According to the Complaint, the DSNY subsequently issued Plaintiff eleven "summonses," which eventually resulted in at least one hearing before a judge. (*Id.* 23-24.) Plaintiff alleges that she did not receive any summons nor attend any hearing. (*Id.* at 23.) Instead, according to the Complaint, the Candidate received the summonses and attended the hearing on Plaintiff's behalf. (*Id.* at 23-24.) Ultimately, the charged violations were dismissed. (*Id.*) Plaintiff, nonetheless, seeks what the Court can only construe as declaratory relief in the form of a judgment declaring that the DSNY may not: (1) "presume guilt[] if [an individual's] name or [their] contact information is on a sign," under Section 10-119; (2) "hold a trial against someone who is unable to defend

23

themselves"; and (3) "add up the penalties for [sanitation and campaign finance] violations."[9] (*Id.* at 34.)

"To establish standing for . . . declaratory relief, a plaintiff must show that '[s]he has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct.'" *Ortiz v. Orange Cnty., New York*, No. 23 CV 2802, 2024 WL 4905157, at *3 (S.D.N.Y. Nov. 27, 2024) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 101-02 (1983)). "'Abstract injury is not enough.'" *White v. Cnty. of Suffolk*, No. CV 20-1501, 2021 WL 2953220, at *5 (E.D.N.Y. July 14, 2021) (discussing standing to seek declaratory relief). Nor does past exposure to illegal conduct, itself, show an injury if "'unaccompanied by any continuing, present adverse effects.'" *Id.* (quoting *O'Shea v. Littleton,* 414 U.S. 488, 495-96 (1974)). Rather, a plaintiff must either show she has been injured or "'establish how [she] will be injured prospectively.'" *Id.* (quoting *Marcavage v. City of New York*, 689 F.3d 98, 103 (2d Cir. 2012)) (citing *Dorce v. City of New York*, 2 F.4th 82, 95 (2d Cir. 2021)). That said, "an allegation of future injury will be sufficient [for declaratory relief] only if 'the threatened injury is certainly impending, or there is a substantial risk that the harm will occur.'" *Dorce*, 2 F.4th at 95 (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)). Here, Plaintiff concedes that the charged violations were dismissed and that she did not incur any penalties. (*See* Compl. at 24.) Even assuming that the summonses and the initiation of the proceedings against Plaintiff somehow constituted illegal conduct, Plaintiff alleges, at most, mere exposure to

---

[9] Indeed, in her opposition brief, Plaintiff expressly states that she "seeks declaratory relief to prevent the recurrence of [the DSNY's] retaliation . . . ." (Pl.'s Mem. at 15.) It is true that, in her opposition, Plaintiff newly states that she also seeks "compensatory relief for the emotional distress she experienced." (*Id.*) However, it is well settled that "[a plaintiff] may not use . . . her opposition to a dispositive motion as a means to amend the complaint." *Shah v. Helen Hayes Hosp.*, 252 F. App'x 364, 366 (2d Cir. 2007) (summary order); *see also Byvalets v. New York City Hous. Auth.*, No. 16-CV-6785, 2017 WL 7793638, at *9 (E.D.N.Y. July 28, 2017) ("[A] plaintiff may not use h[er] opposition papers as a vehicle to allege new facts, or to assert new claims for relief"), *report and recommendation adopted*, No. 16CV6785, 2018 WL 1067732 (E.D.N.Y. Feb. 23, 2018). As such, Plaintiff's request for compensatory damages is disregarded.

said conduct.  (*See* Compl.)  In other words, the Complaint does not include any allegation from which the Court could infer any "continuing, present adverse effects" or "prospective[]" harm. *White*, No. CV 20-1501, 2021 WL 2953220, at *5.  It is, thus, plain that Plaintiff lacks standing to seek declaratory relief.  *See White*, No. CV 20-1501, 2021 WL 2953220, at *5 (quoting *O'Shea,* 414 U.S at 496); *Id.* (quoting *Marcavage*, 689 F.3d at 103).  Plaintiff's claims arising from the summonses are dismissed, accordingly.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED.

SO ORDERED.

Dated: Brooklyn, New York
      March 31, 2026

/s/ LDH
LaSHANN DeARCY HALL
United States District Judge